**UNITED STATES DISTRICT COURT**     JS-6
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00133-DOC-ADS            Date: July 8, 2020

Title: CARPERNTERS SOUTHWEST ADMINISTRATIVE CORPORATION ET AL.
     v. BRAIN R. JONES ET AL.

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Kelly Davis | Not Present |
|:---:|:---:|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT [16]**

      Before the Court is a Motion for Default Judgment ("Motion") (Dkt. 16), brought by Plaintiffs Carpenters Southwest Administrative Corporation ("CSAC") and Board of Trustees for the Carpenters Southwest Trusts (collectively, "Plaintiffs"). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Having reviewed the papers and considered the arguments, the Court hereby **GRANTS** the Motion for Default Judgment.

**I. Background**

      **A. Facts**

      The following facts are drawn from the Complaint (Dkt. 1). Plaintiffs assert violations of section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 184(a), and sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145. Compl. ¶ 1.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SA CV 20-00133-DOC-ADS | Date: July 8, 2020 |

Page 2

Plaintiff CSAC is the administrator of the Southwest Carpenters Health and Welfare Trust, the Southwest Carpenters Pension Trust, the Southwest Carpenters Vacation Trust, and the Southwest Carpenters Training Fund, and the assignee of the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, the Contract Administration Trust for Carpenter-Management Relations, the Carpenters-Contractors Cooperation Committee, the Southern California Drywall Industry Fund, the Western States Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc., and the Grievance Obligation Trust Fund (collectively, the "Plans"), and as such is a plan fiduciary pursuant to ERISA section 3, 29 U.S.C. § 1002. *Id*. ¶ 9. The trustees or directors of each of the Plans have assigned to CSAC all their rights, title, and interest in and to amounts due and owing to the respective Plans by the employer. *Id*. ¶ 10. Defendant Brian R. Jones, doing business as Airwall Installation Services ("Employer"), was and is a contractor engaged in the construction industry within the jurisdiction of the relevant labor organizations that are party to the collective bargaining agreements involved. *Id.* ¶¶ 11, 12.

Plaintiffs allege that Employer made, executed, and delivered to the Southwest Regional Council of Carpenters and its affiliated local unions ("Union") a Carpenters Memorandum Agreement dated December 8, 2011 ("Memorandum Agreement"), which binds Employer to the terms and conditions of the Plans' various existing and subsequent applicable agreements (collectively, the "Agreements"). *Id*. ¶¶ 13-15. The Agreements require Defendant Employer to pay fringe benefit contributions for every hour worked by employees performing services covered by the Agreements and further require Employer to make the fringe benefit contributions by way of Employers Monthly Reports ("Reports") to the Plans at their place of business in Los Angeles, California each month. *Id.* ¶¶ 16, 17. The Agreements provide for liquidated damages resulting from a failure to pay contributions when due, in the amount of $30 per delinquency or 10 percent of the amount of the contributions due, whichever is greater, in addition to the unpaid or untimely contributions. *Id.* ¶ 18.

Plaintiffs allege that Defendant Employer engaged workers who performed services covered by the Agreements and failed to pay the fringe benefit contributions as prescribed by the Agreements from July 1, 2015 through the present. *Id*. ¶¶ 19, 20, 41.

Plaintiffs further assert that Defendant Employer failed to submit Reports stating the amount of contributions owed along with the fringe benefit contributions to the Plans at their place of business from January 2019 through December 2019. *Id.* ¶ 31. Plaintiffs allege that they notified Defendant Employer by letter of each failure to submit Reports

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00133-DOC-ADS                                                     Date: July 8, 2020

Page 3

and/or pay contributions on due dates, and Employer has failed to pay the delinquencies owed to the Plans in violation of the Agreements. *Id*. ¶¶ 37–40. According to Plaintiffs, these delinquencies occurred beginning in March 2016 through the present. *Id.* ¶ 37.

Plaintiffs request that the Court enter default judgment in favor of Plaintiffs and against Defendant Employer for damages as requested in the first, second, and third claims for relief, and for any further relief that the Court deems proper on the ground that the default has been entered against Defendant Employer for failure to answer or otherwise defend and that Plaintiffs have established their entitlement to the relief requested. *See generally* Mot.

### B. Procedural History

On January 22, 2020, Plaintiffs filed the Complaint, alleging causes of action for (1) damages for failure to pay fringe benefit contributions; (2) specific performance for specific missing reports; and (3) injunctive relief for failure to timely file and pay employer monthly reports. *See generally* Compl. Plaintiffs filed proof of service on March 31, 2020. Dkt. 11. On March 30, 2020, Plaintiffs filed a Request for Entry of Default (Dkt. 10), which was granted on March 31, 2020 pursuant to Fed. R. Civ. P. 55(a) (Dkt. 12). Plaintiffs filed the instant motion on May 29, 2020 (Dkt. 16).

## II.  Legal Standard

Federal Rule of Civil Procedure 55(b) provides that the Court may, in its discretion, order default judgment following the entry of default by the Clerk. Fed. R. Civ. P. 55(b). Local Rule 55 sets forth procedural requirements that must be satisfied by a party moving for default judgment. C.D. Cal. R. 55. Entry by the Clerk is proper when the amount of damages is "for a sum certain or a sum that can be made certain by computation"; entry by the Court is proper "[i]n all other cases." Fed. R. Civ. P. 55(b). Upon entry of default, the well-pleaded allegations of the complaint are taken as true, with the exception of allegations concerning the amount of damages. *See, e.g.*, *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  However, "necessary facts not contained in the pleading, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Where the pleadings are insufficient, the Court may require the moving party to produce evidence in support of the motion for default judgment.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-00133-DOC-ADS                                Date: July 8, 2020

Page 4

When deciding whether to enter default judgment, courts consider seven factors:

(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III. Discussion

### A. Procedural Requirements

Plaintiffs have satisfied the requirements of Local Rules 55-1 and 55-2 and Federal Rule of Civil Procedure 55(b). Plaintiffs requested and received an entry of default against the Defendant (Dkt. 12). Having determined Plaintiffs' procedural compliance, the Court turns to the substance of Plaintiffs' Motion.

### B. *Eitel* Factors

#### 1. The Possibility of Prejudice to Plaintiff

The first *Eitel* factor requires the Court to consider the harm to plaintiff if the Court does not grant default judgment. *See PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, without an entry of default judgment, Plaintiffs will be prejudiced and denied the right to judicial resolution of the claims presented. *See id*. Plaintiffs alleges that, unless Defendant Employer is compelled to submit Reports with full payment, Plaintiffs will continue to suffer damage and the Plans have the potential to become financially unsound, as their ability to make payments to which they are contractually bound is hindered by Defendant's failure to make his contributions. Mot. at 4-6. Defendant Employer has failed to defend against the action, denying Plaintiffs their rights under ERISA. *Id.* at 8. Accordingly, the Court finds that this factor weighs in favor of default judgment.

#### 2. Merits of Claim and Sufficiency of the Complaint

Courts often consider the second and third *Eitel* factors together. *See PepsiCo*, 238 F. Supp. 2d at 1175. The second and third *Eitel* factors favor default judgment where the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00133-DOC-ADS                                          Date: July 8, 2020

Page 5

complaint states a claim for relief. *Id.* at 1177 (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). In their analyses of the second and third *Eitel* factors, courts accept as true all well-pleaded allegations regarding liability. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Section 502(a) of ERISA provides that:

> "[a] civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

29 U.S.C. § 1132(a)(3).

Further, ERISA section 515 provides that:

> "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

29 U.S.C. § 1145.

Plaintiffs have standing to pursue the ERISA claim because they allege that the Collective Bargaining Agreement under which more than one employer is required to contribute—bringing it within the scope of ERISA—obligates Defendant Employer to make employee benefit contributions (Decl. of Norma Guerrero (Dkt. 16-4) at 1), and that Defendant has failed to pay his contributions. Compl. ¶¶ 6, 17, 20. The Court accepts the allegation as true because of Defendant's default. *See Geddes*, 559 F.2d 557 at 560. Relief for damages for failure to pay benefit contributions, relief for specific performance for specific missing Reports, and injunctive relief for failure to timely file and pay employer monthly Reports may address the issue.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. SA CV 20-00133-DOC-ADS | Date: July 8, 2020 |

Page 6

### i. Merits of Claim for Damages

Article III of the Southwest Carpenters Health and Welfare Trust (Dkt. 16-6)—an agreement to which Defendant agreed to comply upon signing the Memorandum Agreement—provides that signatory employers are obligated to pay contributions to the Fund each month. Decl. of Norma Guerrero (Dkt. 14-4); Compl. ¶ 14; Mot. at 9. Article III also provides for liquidated damages and interest if a signatory employer fails to pay the fringe benefit contributions. *Id*. Because ERISA section 515 provides for an action to recover liquidated damages pursuant to multi-employer plan agreements to which parties have signed on to, and because Defendant has signed on to the Memorandum Agreement and thereby agreed to Article III of the Southwest Carpenters Health and Welfare Trust providing for liquidated damages, Defendant Employer is liable for damages for failure to pay fringe benefit contributions pursuant to the Agreements. 29 U.S.C. § 1145; Compl. ¶ 11. Therefore, the Court finds that Plaintiffs have stated a claim for damages under ERISA.

### ii. Merits of Claim for Specific Performance for Missing Reports

ERISA section 502 provides for specific performance actions in that the court shall award "other legal or equitable relief as the court may deem appropriate" in an action to enforce a multiemployer plan. 29 U.S.C. § 1132(g)(2)(E); *Constr. Laborers Tr. Fund for the S. Cal. Admin. Co. v. Anzalone Masonry Inc.*, 316 F.Supp.3d 1192 (C.D. Cal. 2018). The Supreme Court has held that only "those categories of relief that were *typically* available in equity" are permitted under section 502. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). Traditionally in a court of equity, "[s]pecific performance will be granted where the specific act contracted for . . . is the redress required; and in such cases, where there are good faith, valuable consideration, clean hands, and no unreasonable hardship to result to the defendant, it is as such a matter of course . . . to decree specific performance." *Specific performance of a contract as a matter of right*, 65 A.L.R. 7 (1930). Here, the Agreements require Defendant to complete and submit Reports stating the amount of contributions owed each month. Decl. of Norma Guerrero (Dkt. 16-4). Defendant has failed to submit Reports from January 2019 through December 2019, so Defendant thereby violates the terms of the Plan's Agreements. Compl. ¶ 31. Plaintiffs seek to enjoin Defendant from failing to complete and submit Reports stating the amount of contributions owed pursuant to the Agreements. Compl. ¶¶ 30, 31. Because the two parties contracted to convey specific objects—here,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00133-DOC-ADS                                                                 Date: July 8, 2020

Page 7

the Reports—and Defendant has failed to do so, and the conveyance of specific objects pursuant to a valid agreement is relief typically available in equity, Plaintiffs have a viable ERISA claim to specific performance for the missing Reports. *Id*.

### iii.  Merits of Claim for Injunctive Relief

To pursue injunctive relief under § 1332(a)(3)(A), Plaintiffs must possess both constitutional and statutory standing. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Plaintiffs' statutory standing has been previously established in this section. Under Article III, a plaintiff must demonstrate "significant possibility of future harm." *See San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). Plaintiffs assert that Defendant Employer will continue to refuse or fail to pay contributions to the Plans and thereby create future unpaid delinquencies during the remaining terms of the Agreements. Compl. ¶ 42. Further, they allege that Plaintiffs will suffer future harm for which there is no adequate remedy at law since the Plans will be required to bring a multiplicity of actions at law to recover the delinquencies as they occur, to the Plans' expense and hardship. *Id.* Because Defendant Employer has failed to pay contributions in accordance with the Agreements (Compl. ¶ 20), in the absence of injunctive relief, it is possible if not probable that this harm and associated harms will continue. Therefore, Plaintiffs' burden of demonstrating a "significant possibility of future harm" has been met, and Plaintiffs have standing to pursue injunctive relief. *See San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1126.

Second, Plaintiffs have shown that they are plan "fiduciaries" within the meaning of ERISA. ERISA defines a plan fiduciary in functional rather than formal terms, and "courts must 'examine the conduct at issue to determine whether it constitutes management or administration of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary duties.'" *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 836-37 (9th Cir. 2018); *Acosta v. Brian*, 910 F.3d 502, 518 (9th Cir. 2018) (quoting *In re Luna*, 406 F.3d 1192, 1207 (10th Cir. 2005). Here, Plaintiffs assert that they "were and now are fiduciaries and are duly authorized and acting trustees of the ERISA Trust Funds defined in paragraph six," are "authorized agents to act on behalf of the remaining Funds and entities (defined in paragraph nine) with respect to these delinquencies," and Plaintiff CSAC is the administrator of various trusts. Compl. ¶¶ 3, 4, 9. As such, Plaintiffs are plan fiduciaries within the meaning of section 3 of ERISA.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00133-DOC-ADS　　　　　　　　　　　　　　　　Date: July 8, 2020

Page 8

Next, Plaintiffs have established that they are suing "to enjoin" Defendant Employer from failing to make its contributions and restrained from incurring delinquencies pursuant to the terms of the Agreement. 29 U.S.C. § 1132(a)(3); Compl. ¶ 42. Enjoining "an act or practice" within the meaning of ERISA might mean that a court enforce an agreement "when the unavailability of alternative financing would leave the plaintiff with injuries that are difficult to value; or to enforce an obligor's duty to make future monthly payments, after the obligor had consistently refused to make past payment concededly due, and thus threatened the obligee with the burden of bringing multiple damages actions." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211 (2002) (quoting *Bowen v. Massachusetts*, 487 U.S. 879 (Scalia, J., dissenting)). Plaintiffs note that "if the court were to deny the injunction relief requested, then Plaintiffs would need to file a separate complaint for every month that Defendant . . . did not timely pay contributions." Mot. at 7-8. So, Plaintiffs are entitled to injunctive relief under section 502(a)(3)(A) because Defendant's consistent failure to pay contributions shows that it is probable that Plaintiffs will face the burden of bringing multiple damages actions in order to remedy future violations. Compl. ¶ 20. The Court finds that Plaintiffs have stated a claim for injunctive relief under ERISA.

### 3. Sum of Money at Stake

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *Pepsico*, 238 F. Supp. 2d at 1176. This requires the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct. *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted"). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

Here, Plaintiffs seek a grand total of $15,024.03, including Defendant's unpaid contributions, for interest and liquidated damages as provided in the Agreements, for audit costs, and for attorneys' fees and costs. Mot. at 10; *see generally* Compl. This amount, plus the amount that would have to be spent in order to comply with an injunction, would be the entirety of Defendant's liability should the Court grant this Motion. Such an award is not disproportional to the harm caused. *See Johnson v. Huynh*, No. CIV S-08-1189 JAM DAD, 2009 WL 2777021 at *2 (E.D. Cal. Aug. 27, 2009) (holding that $12,000 was a "relatively small award of damages" in a case for default

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00133-DOC-ADS                                                               Date: July 8, 2020

Page 9

judgment). The Court determines that the fourth *Eitel* factor weighs in favor of granting the default judgment.

### 4. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor requires the Court to consider the possibility of dispute as to material facts in the case. Where a plaintiff's complaint is well-pleaded and the defendants make no effort to properly respond, the likelihood of disputed facts is very low. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

Here, Plaintiffs provided a well-pleaded complaint and Defendant failed to dispute the allegations. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 1177 (citing *TeleVideo Sys., Inc.*, 826 F.2d at 917–18). Accordingly, this factor weighs in favor of default judgment.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers the possibility that a defendant's default resulted from excusable neglect. *Vogel*, 992 F. Supp. 2d at 1013; *see also Eitel*, 782 F.2d at 1471–72. Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). While there is always a possibility that a defendant might appear and claim excusable neglect, where the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," this factor favors entry of default judgment. *Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, Defendant was properly served with the Complaint. *See* Dkt. 1, 9, 11. Defendant was also served with Plaintiffs' Request to Enter Default on March 30, 2020. Dkt. 10. However, no answer was filed and Defendant has made no attempt to make an appearance at any point in this action. Defendant has simply made no effort to defend this suit. Because the likelihood of excusable neglect is very low, this factor weighs in favor of default judgment.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00133-DOC-ADS                                      Date: July 8, 2020

Page 10

### 6. Strong Policy Favoring Decision on the Merits

The seventh *Eitel* factor requires the Court to consider the strong judicial policy favoring decisions on the merits before granting default judgment. "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Pepsico*, 238 F. Supp. 2d at 1177 (citation omitted). Rule 55(a) allows a court to decide a case before the merits are heard if a defendant fails to appear and defend. *Id.* ("Defendant's failure to answer plaintiffs' complaint makes a decision on the merits impractical, if not impossible."). Since Defendant has not responded to Plaintiffs' Complaint, the Court is not precluded from entering judgment.

Taken together, the seven *Eitel* factors weigh in favor of granting default judgment against the Defendant.

### C. Remedies

Having determined that entry of default judgment is proper, the Court turns to the remedies sought. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Once "[i]njury is established[,] . . . plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). While the Court is not required to issue findings of fact as to liability, it must do so as to damages. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990). The Court can consider "declarations, calculations, and other documentation of damages in determining if the amount at stake if reasonable," when assessing whether "there is an adequate basis for the damages awarded in the default judgment." *Xerox Corp. v. Am. Mail Ctrs., Inc.*, 2016 WL 10834102, at *2 (C.D. Cal. Oct. 14, 2016) (quoting *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-CV-03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)).

In this Motion, Plaintiffs seek (1) damages including (i) contributions in the amount of $8,322.31; (ii) audit fees in the amount of $2,300.00; and (iii) pre-judgment interest in the amount of $2,065.28; (2) specific performance; (3) injunctive relief; and (4) attorneys' fees and costs in the amount of $1,299.55. Mot. at 10.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00133-DOC-ADS                                           Date: July 8, 2020

Page 11

### 1.     Damages for Contributions, Interest, and Audit Fees

Section 515 of ERISA requires employers to timely pay fringe benefit contributions in accordance with the terms and conditions of collective bargaining agreements. 29 U.S.C. § 1145. Plaintiffs seek $8,322.31 in damages under section 515 for the amount of contributions owed for the period of months from August 2015 through February 2018. Mot. at 10; Decl. of Chris Hidalgo (Dkt. 16-11) Ex. 8. Plaintiffs have provided supporting documentation detailing the calculation of this damages amount. Decl. of Chris Hidalgo (Dkt. 16-10) ¶ 13; Decl. of Chris Hidalgo (Dkt. 16-11) Ex. 8 at 8. The Court grants Plaintiffs' request for the principal amount of $8,322.31.

If an employer is found to have violated section 515, he or she is liable for interest on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(B). Because there is a collective bargaining agreement—here, the Agreements—interest on unpaid contributions is calculated pursuant to the rate provided in the agreement. 29 U.S.C. § 1132(g)(2)(E). Plaintiffs allege that the Agreements here set an interest rate of 7 percent per annum from the due date to billing date, April 2, 2019. Decl. of Norma Guerrero (Dkt. 16-7) at 128-29; Decl. of Chris Hidalgo (Dkt. 16-12) Exs. 9-10. Plaintiffs seek interest from April 2, 2019 through July 6, 2020 (the hearing date of this Motion), accruing at $2.24 per day, totaling $1,032.64, plus "double interest" on contributions pursuant to 29 U.S.C. § 1132 (g)(2)(C), totaling $1,032.64. *Id.* Accordingly, the Court awards interest on unpaid contributions calculated at a doubled rate of seven percent per annum from April 2, 2019 through July 6, 2020, which is $2,065.28.

In accordance with the terms of the Agreements, Plaintiffs also seek $2,300.00 in audit fees. Mot. at 10. Although ERISA does not specifically authorize an audit-fees award, section 1132 authorizes a court to award "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). The 9th Circuit has held that audit costs are recoverable under subsection (E) because an award of audit costs is "consistent with the policy of encouraging full and fair contributions." *Operating Eng'rs Pension Tr. v. A-C- Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988). The Agreements provide that Defendant is to pay audit costs if delinquencies are found. Decl. of Norma Guerrero (Dkt. 16-4) at 8. Calibre CPA Group performed the audit at the cost of $2,300.00. Decl.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00133-DOC-ADS                                         Date: July 8, 2020

Page 12

of Chris Hidalgo (Dkt. 16-10) ¶ 10. So, the Court finds it appropriate to award Plaintiffs $2,300.00 in audit fees.

### 2.     Specific Performance

Plaintiffs seek specific performance under ERISA to enjoin Defendant from failing to complete and submit monthly contribution Reports stating the amount of contributions owed pursuant to the Agreements. Compl. ¶¶ 30, 31; Mot. at 6. ERISA section 502 provides for specific performance actions in that the court shall award "other legal or equitable relief as the court may deem appropriate" in an action to enforce a multiemployer plan. 29 U.S.C. § 1132(g)(2)(E); *Anzalone Masonry Inc.*, 316 F.Supp.3d at 1201. The Agreements require that Defendant complete and submit Reports stating the amount of contributions owed each month, and Defendant has failed to do so from January through December, 2019. Compl. ¶¶ 30, 31; Decl. of Norma Guerrero (Dkt. 16-4) at 8. Further, in the absence of the Reports, Plaintiffs are unable to calculate the amount owing. Compl. ¶ 32. Accordingly, the Court deems specific performance compelling Defendant to submit monthly Reports from the months of January 2019 through December 2019 to be an appropriate relief under ERISA section 502.

### 3.     Injunctive Relief

Plaintiffs seek injunctive relief under ERISA, for the Court to restrain and enjoin Defendant from failing to deliver to Plaintiffs, no later than the 25th day of each month for the remainder of the terms of the Agreements: (a) a monthly Report pursuant to the Agreements; (b) a monthly declaration from Defendant attesting to the accuracy of the Report; and (c) a check for the full amount owing on the monthly Reports. Compl. at 10. Section 502(a) of ERISA provides that "[a] civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(A). "Injunctive relief may be appropriate when: (1) the plaintiff is threatened by some irreparable injury; (2) the injury contemplated is actual and not prospective; and (3) the issuance of an injunction does not offend public policy." *Carpenters Sw. Admin. Corp. v. TLB Constr., Inc.*, No. CV 08-0505, 2008 WL 11409515 at *5 (C.D. Cal. Aug. 28, 2008).

Here, Plaintiffs state that for the period January 2019 through December 2019, Defendant failed to comply with the terms of the Agreements by failing to submit its monthly reports with payment. Compl. ¶¶ 30, 31; Mot. at 3. Accordingly, Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00133-DOC-ADS                             Date: July 8, 2020

Page 13

argue, the employee beneficiaries have suffered and will continue to suffer hardship and irreparable injury. Compl. ¶¶ 32, 42. Given that ERISA provides for enforcement of employee benefit plans through legal and equitable means, the Court concludes that the requested injunction for the delivery of Reports is appropriate. Accordingly, Plaintiffs' request for injunctive relief restraining and enjoining Defendant from failing to deliver Reports and declarations attesting to Defendant's personal knowledge to the truthfulness, completeness, and accuracy of the Monthly Report is **GRANTED**.

Plaintiffs further allege that Defendant has failed to submit contributions from July 1, 2015 and are continuing to do so, and request for an injunction restraining and enjoining Defendant from failing to deliver a check, pursuant to the Agreements, for the full amount owing on the monthly Reports. Compl. ¶ 41, at 10. This Court has held that plaintiffs seeking to enjoin defendants from failing to deliver checks pursuant to an ERISA multi-employer plan agreement is appropriate in cases in which plaintiffs face actual irreparable injury and in which the issuance of the injunction does not offend public policy. *Carpenters Sw. Admin. Corp. v. Div. Three Constr. Servs., Inc.*, 2011 WL 13376931 at *7. The Court finds that Plaintiffs are entitled to injunctive relief because they are threatened by actual irreparable injury as alleged in the Complaint. Specifically, Plaintiffs have alleged that unless injunctive relief is granted, Defendant will continue to refuse to pay contributions, Plaintiffs will suffer irreparable harm by bringing a multiplicity of actions to recover the delinquencies as they occur, and Plaintiffs will have little prospect of ever collecting additional delinquencies. Compl. ¶ 42. The Court finds that the issuance of the injunction will not offend public policy. Accordingly, under ERISA's provision for the enforcement of employee benefit plans through legal and equitable means, Plaintiffs' request for injunctive relief restraining and enjoining Defendant from failing to deliver contributions each month pursuant to the Agreements is **GRANTED**.

### 4.     Attorney's Fees and Costs

Under ERISA, the award of attorneys' fees is mandatory in all actions by an employee benefit trust fund to collect unpaid contributions. 29 U.S.C. § 1332(g)(2)(D); *Lads Trucking Co. v. Bd. of Trs. of the W. Conference of Teamsters Pension Tr. Fund*, 777 F.2d 1371, 1373 (9th Cir. 1985). Plaintiffs, as fiduciaries of the trusts, are therefore entitled to reasonable attorneys' fees. The total amount of attorneys' fees and costs awarded is $1,299.55.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00133-DOC-ADS                                    Date: July 8, 2020

Page 14

## IV. Disposition

For the reasons set forth above, the Court **GRANTS** the Motion for Default Judgment and **AWARDS** (1) $8,322.31 in unpaid contributions; (2) $2,065.28 in pre-judgment interest; (3) $2,300.00 in audit fees; and (4) $1,299.55 in attorneys' fees and costs. The Court also **ORDERS** specific performance and injunctive relief.

The clerk shall serve this minute order on the parties.

MINUTES FORM 11                                           Initials of Deputy Clerk: kd
CIVIL-GEN